IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MYERS CONTROLLED POWER, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND; | ) Case No: _____ |
| | ) |
| ZURICH AMERICAN INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

The Plaintiff MYERS CONTROLLED POWER, LLC ("MCP" or "Plaintiff"), a Delaware Limited Liability Company, by and through their attorneys, Laurie & Brennan, LLP and for its Complaint against FIDELITY AND DEPOSIT COMPANY OF MARYLAND and ZURICH AMERICAN INSURANCE COMPANY (individually "Fidelity" and "Zurich," collectively "Defendants") a Maryland and New York Corporation respectively, both headquartered in Illinois, state as follows:

### NATURE OF THE ACTION

This is an action by a sub-subcontractor under a payment bond concerning a project for the rehabilitation of the Washington, D.C. Metro subway line. In 2014, MCP received $2,107,039.86 by way of a joint check from the general contractor Clark Construction made payable to MCP and a subcontractor Truland Walker Seal Transportation ("Truland") issued solely for the work MCP performed for the subway rehabilitation project. Several months after the check was issued,

1

Truland filed for bankruptcy, and in 2016, the bankruptcy trustee sought return of those funds claiming the funds were a preference under 11 U.S.C. § 547.

On July 25, 2018, the bankruptcy court (after a full trial), ruled that the funds were considered a preference and a money judgment was entered against MCP in favor of the bankruptcy trustee for the full amount of the check MCP received in 2014, plus interest. Under common law principles, the Defendants' secondary guarantee under the payment bond is now revived and the Defendants owe this amount to MCP under the payment bond.

## THE PARTIES

1. Plaintiff Myers Controlled Power, LLC ("MCP") is a limited liability company organized under the laws of the State of Delaware and based in Ohio. MCP's sole member is Myers Power Products, Inc. Myers Power Products, Inc., is a corporation organized under the laws of Delaware with its principal office in Ohio. Plaintiff MCP is thus a citizen of Delaware and Ohio.

2. Defendant Fidelity and Deposit Company of Maryland ("Fidelity") is a corporation organized under the laws of Maryland with its principal place of business in Illinois. Fidelity is thus considered a citizen of Maryland and Illinois.

3. Defendant Zurich American Insurance Company ("Zurich") is a corporation organized under the laws of New York with its principal place of business in Illinois. Zurich is thus considered a citizen of New York and Illinois.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendants by virtue of their contacts with the forum state in that each does business in the state of Illinois and each maintain their principal place of business in Schaumburg, Illinois.

6. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391 as Defendants are subject to personal jurisdiction in this district and do substantial business within this District.

## BACKGROUND FACTS

### A. *The Various Parties' Contractual Arrangements.*

7. Clark Construction Group, LLC ("Clark") served as general contractor for a major project concerning the rehabilitation of the Orange/Blue Line – Stadium Armory to National Airport – for the Washington Metropolitan Area Transit Authority (WMATA) ("the Project") in Washington, D.C. The Project included the $273 million renovation of the Orange and Blue Line subway and involved electrical upgrades, architectural upgrades, the installation of 26 kiosks and mechanical upgrades and repairs.

8. In January 2011, Clark entered into a subcontract agreement with Truland, wherein Truland agreed to perform certain work and services in connection with the Project for a total amount of $45,000,000.00 (the "Truland Subcontract Agreement"). (Attached as Exhibit 1 is a copy of the Truland Subcontract Agreement).

9. In connection with the Truland Subcontract Agreement, Truland caused its bonding companies, Fidelity and Zurich, to issue performance and payment bonds for its work at the Project as Bond No. 09021048 in the amount of $45 million. (Attached as Exhibit 2 is a copy of the Bond issued by Defendants).

10. The payment Bond states in pertinent part:

WHEREAS, the Obligee [Clark] has been awarded a contract (hereinafter called the "Prime Contract") by WASHINGTON METROPOLITATION AREA TRANSIT AUTHORITY, 600 FIFTH STREET, NW, WASHINGTON , DC 20001, for REHABILITATION OF ORANGE/BLUE LINE—STADIUM ARMORY TO NATIONAL AIRPORT, WASHINGTON, DC and;

WHEREAS, the Principal [Truland] has entered into a written Subcontract with Obligee, dated JANUARY 25, 2011, to perform, as Subcontractor, certain portions of the work in connection with said Prime Contract, consisting of the work described in Exhibit B and elsewhere in the Subcontract, which Subcontract is hereby referred to and made a part hereof.

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall promptly make payment to all persons suppling labor and material in the prosecution of the work provided for in said Subcontract and any and all modifications of said Subcontract that may hereinafter be made, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

\* \* \*

That said Principal and the said Surety agree that this Bond shall inure to the benefit of all persons supplying labor and material in the prosecution of the work provided for in said Subcontract, as well as to the Obligee, and that such person may maintain independent actions upon this Bond in their own names.

(Exhibit 2).

11. Thereafter, Truland subcontracted with a Disadvantaged Business Entity ("DBE"), Nationwide Electrical Services, Inc. ("NES"), for certain services and equipment required for Truland's scope of work at the Project. NES thereafter entered into a supplier subcontract with MCP on or about August 23, 2012, wherein MCP agreed to provide certain services and equipment for the Project in exchange for payment of $17,041,113.00 (the "MCP Supply Agreement"). (Attached as Exhibit 3 is a copy of the MCP Supply Agreement).

### B. The Joint Check Agreement

12. By April 2014, Truland and its affiliates were "out of trust" with their subcontractors and suppliers, meaning that Truland and its affiliates were receiving payments from general contractors but were not paying the suppliers and subcontractors in violation of the flow-

4

down provisions of their subcontracts. (*See, e.g.,* December 2014 report prepared by Protiviti global consulting firm on behalf of Truland, attached hereto as Exhibit 4).

13. Clark was made aware of these problems, and on April 29, 2014, Charles Breeden of Clark stated: "It was brought to my attention this afternoon that MCP (Truland's DC Gear Supplier) has notified Truland that they will not proceed with additional work until old invoices have been paid." (Attached as Exhibit 5 is a copy of the April 29, 2014 email from Charles Breeden of Clark).

14. On May 1, 2014, Charles (Chuck) Tomasco of Truland noted that "MCP has currently stopped delivering equipment which will delay the entire project and jeopardize the $28M K-Line change order we're awaiting from WMATA/Clark . . . [W]e have also requested that Clark issue them payment via joint check but have not confirmed yet." (Attached as Exhibit 6 is a copy of the May 1, 2014 email from Charles Tomasco of Truland).

15. On May 7, 2014 and after still not having received payment from Truland, MCP informed Truland that it was refusing to release additional equipment for the Project until it received further payment. (Attached as Exhibit 7 is a copy of the May 7, 2014 email from MCP to Truland).

16. On May 9, 2014, Clark formally notified Truland by letter of its default arising from Truland's failure to pay its suppliers and subcontractors. (Attached as Exhibit 8 is a copy of the May 9, 2014 Letter from Clark to Truland).

17. On May 13, 2014, Clark stated "Clark will ensure that MCP receives the payments that are due for all gear which has been produced and will be produced. Clark will issue Joint Checks to MCP/Truland that will be endorsed by Truland and then sent to MCP." (Attached as Exhibit 9 is a copy of the May 13, 2014 email from Clark).

5

18. On June 11, 2014, a draft of a Joint Check Agreement for all affected subcontractors (along with Joint Check Agreements on other Truland projects) was circulated. (Attached as Exhibit 10 is a copy of the email with the attached draft Joint Check Agreement).

19. Clark, MCP and Truland subsequently entered into a Joint Check Agreement (the "JCA"). (Attached as Exhibit 11 is a copy of the executed JCA).

20. Defendants also approved the JCA by executing the agreement as Truland's surety. (Exhibit 11).

21. On May 27, 2014, MCP, satisfied with Clark's representations that it would enter into a JCA, released equipment with a value of $1,819,206.31 for delivery to the Project. The invoice for this equipment also included $181,920.63 in "Overhead/Profit," for a total of $2,001,126.94. (Attached as Exhibit 12 is a copy of the May 27, 2014 Invoice).

22. On June 18, 2014, MCP released additional equipment with a value of $261,667.00 for delivery to the Project. The June 18th invoice included an additional $26,166.70 for "Overhead/Profit," for a total Invoice of $287,833.70. (Attached as Exhibit 13 is a copy of the June 18, 2014 Invoice).

23. On July 11, 2014, Clark delivered a check (No. 10101212) to Truland in the amount of $2,107,039.86 (the "Check"). The Check was payable jointly to MCP and Truland. (Attached as Exhibit 14 is a copy of the Check).

24. Truland endorsed the Check and had it delivered back to Clark. Clark then forwarded the check to MCP.

25. MCP then cashed this check.

26. At no time prior to the issuance of the Check did the Project owner (WMATA), Clark, Truland or the Defendants make any statement that MCP was not justly due those amounts.

6

### E. Truland and its Affiliates file for Bankruptcy Protection.

27. On July 23, 2014, Truland filed a voluntary bankruptcy petition under Chapter 7 in the United States Bankruptcy Court for Eastern District of Virginia, Case No. 14-2766-BFK ("the Bankruptcy Case").

28. The Bankruptcy Case is being jointly administered (but not substantively consolidated) with all of the Chapter 7 cases of The Truland Group, Inc., and its subsidiaries.

### F. The Bankruptcy Adversary Action

29. On July 21, 2016, the Trustee in the Bankruptcy Case filed an Adversary Proceeding against MCP, Case No. 16-1151-BFK. (Attached as Exhibit 15 is a copy of the Adversary Complaint) ("the Adversary Action").

30. On July 25, 2018, the court in the Adversary Action issued a Memorandum Opinion after conducting a trial and receiving evidence on February 1, 2018 and March 29, 2018. The Court determined the Check issued by Clark jointly to Truland and MCP for only MCP's work was a preference under 11 U.S.C. § 547. In conjunction with the Memorandum Opinion, the bankruptcy court also issued a judgment order in favor of the Trustee and against MCP for $2,107,039.86 (the amount of the Check) plus pre-judgment interest at the federal rate. (Attached as Exhibit 16 is a copy of the Memorandum Opinion and Judgment).

### G. MCP Makes A Bond Claim

31. On March 18, 2018 (before the judgment in the Adversary Action), MCP made a formal bond claim notifying all parties of the Adversary Claim (the "Notice of Claim"). (Attached as Exhibit 17 is a copy of the Notice of Claim with proofs of service).

32. Defendants did not provide a response to the Notice of Claim.

33. On July 26, 2018, MCP (through counsel) notified Defendants of the judgment in the Adversary Action. (Attached as Exhibit 18 is a copy of the July 26, 2018 email to Defendants).

34. To date, Defendants have failed to make payment to MCP under the Bond.

35. The Defendants have previously recognized their potential liability under Bond No. 09021048, as they have filed a contingent secured Proof of Claim in the Bankruptcy Case arising under the indemnity agreement under the Bond. (Attached as Exhibit 19 is a copy of the Defendants' Proof of Claim).

## COUNT I
## CLAIM UNDER PAYMENT BOND

36. Plaintiff realleges paragraphs 1-35 as if fully stated herein.

37. The Payment Bond specifically allows all subcontractors including MCP to bring independent actions under the Bond.

38. The Payment Bond at issue further requires the Defendants (and Truland) to guarantee that all payment for labor and materials on the Project would be paid and the Bond specifically inures to the benefit of all subcontractors, including MCP.

39. Under common law principles, as stated in The Restatement (Third) of Suretyship and Guaranty § 70, a preference action judgment against a subcontractor revives the Sureties' obligation as follows:

> When a secondary obligation is discharged in whole or part by performance by the principal obligor or another secondary obligor, or by realization upon collateral securing such performance, the secondary obligation revives to the extent that the obligee, under a legal duty to do so, later surrenders that performance or collateral, or the value thereof, as a preference or otherwise.

(Accord 72 C.J.S. Principal & Sur. § 129).

40. Numerous courts have held the same. *See, e.g., The Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 408 (6th Cir. 2000) ("[T]he courts have uniformly held that a payment of

8

a debt that is later set aside as an avoidable preference does not discharge a guarantor of his obligation to repay that debt."); *Centre Ins. Co. v. SNTL Corp. (In re SNTL Corp.)*, 380 B.R. 204, 213-14 (B.A.P.9th Cir. 2007) (noting that party opposing revival was unable to cite a single case holding that the surety's liability is not revived by the return of a preferential payment); *Lowrey v. Mfrs. Hanover Trust Leasing Corp. (In re Robinson Drilling, Inc.)*, 6 F.3d 701, 704 (10th Cir. 1993); *Fenold v. Green*, 175 F.2d 247, 249 (2d Cir. 1949); *Herman Cantor Corp. v. Cent. Fid. Bank, N.A. (In re Herman Cantor Corp.)*, 15 B.R. 747, 750 (Bankr. E.D. Va. 1984); *Horner v. First Nat'l Bank*, 141 S.E. 767, 770 (Va. 1928).

41. Courts have further held, "[a] preferential payment is deemed by law to be no payment at all." *Herman Cantor Corp. v. Cent. Fid. Bank, N.A. (In re Herman Cantor Corp.)*, 15 B.R. 747, 750 (Bankr. E.D. Va. 1984).

42. When the bankruptcy court entered judgment on July 25, 2018, requiring MCP to "give back" $2,107,039.86 as a "preference" under the bankruptcy code, the Defendants' guarantee under the Payment Bond was revived and it was as if MCP had never been paid.

43. MCP has performed the work and furnished the services and materials for the Project as required under the MCP Supply Agreement and has satisfied all other obligations owed to Defendants and/or NES, Truland and Clark in accordance with the Bond and applicable law.

44. Under the terms of the payment Bond, Defendants are required to pay MCP the amount of $2,107,039.86 that is required to be returned in accordance with the Memorandum Opinion and Judgment entered in the Adversary Action.

45. Lastly, under 11 U.S.C. § 362(a), the automatic stay, only applies to the debtor, and does not apply to guarantors, sureties, insurers, or other persons liable on the debt. *United States*

*v. Wright*, 57 F.3d 561, 562 (7th Cir.1995); *National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707 (7th Cir.1994); *Pitts v. Unarco*, 698 F.2d 313, 314–15 (7th Cir.1983).

46. Plaintiff has made several demands for payment, but Defendants have refused to recognize their clear obligation under the Bond.

WHEREFORE, Plaintiff MYERS CONTROLLED POWER, LLC requests that a judgment for $2,107,039.86 plus pre-judgment interest and Plaintiffs' reasonable attorneys' fees be entered in its favor and against Defendants FIDELITY AND DEPOSIT COMPANY OF MARYLAND and ZURICH AMERICAN INSURANCE COMPANY and for all other relief that is just and equitable.

## COUNT II
## BAD FAITH

47. Plaintiff realleges paragraph 1-46 as if fully stated herein.

48. Virginia Code § 38.2-209(a) allows recovery of costs and attorney fees in coverage disputes if a carrier does not act in good faith. In determining bad faith, courts must apply the following reasonableness standard: (1) interpretation of policy; (2) investigation; (3) evidence supporting denial of coverage; denial used as tool in settlement; and (4) defense raised issue of first impression or one reasonably debatable.

49. Virginia law specifically identifies claims against sureties that have issued surety bonds as being subject to insurance bad faith laws. *See, e.g., Scottsdale Ins. Co. v. Glick*, 240 Va. 283, 397 S.E.2d 105 (1990).

50. Likewise, the law of Washington D.C., D.C. Code 31-2231.01-31.2231.25, also applies insurance bad faith standards to sureties. *See Fireman's Funds Ins. Co. v. CTIA-The Wireless Ass'n* 480 F. Supp.2d 7 (D.D.C. 2007).

51. In this instance, there is no justifiable reason for Defendants' failure to pay. The law on revival of guarantee is clear. Moreover, Defendants have no surety defense and there is absolutely no defense that Plaintiff did not fully perform its obligations in accordance with the MCP Supply Agreement.

52. Defendants have no reason for their refusal to honor their obligations under the Bond. As a result, under either the law of Virginia or Washington, D.C. Defendants are liable for bad faith damages.

53. As a result, Defendants are liable for the amount owed and for Plaintiff's attorneys' fees and costs for bringing this action.

WHEREFORE, Plaintiff MYERS CONTROLLED POWER, LLC requests that this Court enter an order finding Defendants FIDELITY AND DEPOSIT COMPANY OF MARYLAND and ZURICH AMERICAN INSURANCE COMPANY in bad faith and for Plaintiff's attorneys' fees and costs for bringing this action and for all other relief that is just and equitable.

RESPECTFULLY SUBMITTED:

**MYERS CONTROLLED POWER, LLC**

s/Craig G. Penrose

LAURIE & BRENNAN, LLP
Craig Penrose
2 North Riverside Plaza, Suite 1750,
Chicago, Illinois 60606
(312) 445-8780
cpenrose@lauriebrennan.com

*Attorneys for Plaintiff*